NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

I. SHAH, et al.,

    Plaintiffs,

v.

STATE OF WISCONSIN, et al.,

    Defendant.

Civ. No. 11-0419

OPINION

THOMPSON, U.S.D.J.

## I. INTRODUCTION

This matter comes before the Court upon six pending motions to dismiss filed by the various defendants in this case: Those motions are:

(1) Motion to Dismiss filed by Defendants State of New Jersey, Department of Law and Public Safety, and the Office of the Attorney General ("New Jersey State Defendants") [docket # 17];

(2) Motion to Dismiss, or in the Alternative, for a More Definite Statement, filed by Defendants Frank Olsen-Tank and Parsons Transportation Group [25];

(3) Motion to Dismiss filed by Defendant State of Wisconsin [33];

(4) Motion to Dismiss filed by Defendant the ARUP [39];

(5) Motion to Dismiss for Lack of Jurisdiction filed by Defendants the United States Department of Justice, the United States of America, and the U.S. Attorney's Office ("United States Defendants") [54]; and

(6) Motion to Dismiss, or in the Alternative, for a More Definite Statement, filed by Defendant Tishman Construction Corporation [57].

The Plaintiffs have opposed the motion filed by Olsen-Tank and Parsons Transportation Group and have provided a "part response" to others. (Pls.' Resp. 1) [70]. The Court has decided the motions upon consideration of the parties' written submissions and upon *sua sponte* consideration of arguments in opposition to the motions. For the reasons stated below, the motions to dismiss filed by the New Jersey State Defendants, the State of Wisconsin, and the United States Defendants are granted, and the motions to dismiss filed by Defendants Frank Olsen-Tank and Parsons Transportation Group, the ARUP, and Tishman Construction Corporation are granted in part and denied in part.

## II.  BACKGROUND

Plaintiffs are a family of East Indian immigrants. (Am. Compl. at ¶ 3, 5) [2]. Plaintiff A. Shah, the father and husband of the other Plaintiffs, is a former employee of Defendant State of Wisconsin, Department of Transportation ("DOT") and of Defendant CM Consortium, which is allegedly a New Jersey joint venture of three business entities—Defendants Tishman Construction Corporation, The ARUP, and Parson Transportation Group. (*Id*. at ¶ 3.) This action arises from Plaintiff A. Shah's long-running problems with his former employers, which Plaintiffs characterize as discrimination and hate crimes. The Complaint asserts numerous claims against more than a dozen Defendants, including claims under the New Jersey Civil Rights Act, the New Jersey Constitution, the New Jersey Law Against Discrimination, the Wisconsin Civil Rights laws, Wisconsin state laws against discrimination, the Wisconsin Constitution, 42 U.S.C. § 1983, § 1981, § 1985, and § 1986, Title VII of the Civil Rights Act of

1964, the United States Constitution, several Amendments to the United States Constitution, and various federal and state labor and discrimination laws. (*Id*. at ¶ 1.)

The Complaint is long and convoluted, but the following allegations can be drawn from it. These allegations are accepted as true for the purposes of deciding the pending motions to dismiss. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

Plaintiff A. Shah worked for the Wisconsin DOT from 2000 until 2005, when he was fired after making a whistle-blower complaint for corruption and discrimination. (*Id*. at ¶ 5.) He claims he was also falsely arrested and maliciously prosecuted, and his wife was falsely detained. (*Id*.) After terminating A. Shah, the Defendants are alleged to have prevented A. Shah from working or doing business "any where [sic] in Wisconsin." (*Id*. at ¶ 7.) Plaintiffs moved to New Jersey and A. Shah began working for the CM Consortium, but Defendants "used their influence and forced [A. Shah] to resign." (*Id*.) Certain Defendants then "used their influence over corrupt Judges, attorneys, and court staff and obstructed justice . . . ." (*Id*. at ¶ 8.)

According to the Complaint, A. Shah applied for a manager's position while he was working for the Wisconsin DOT. He scored well on the written test but was forced to wait six months for an interview because of his "race, ethnicity, and religion." (*Id*. at ¶ 13.) Plaintiffs state that no white employees were forced to wait so long. (*Id*.) Plaintiff A. Shah complained internally and filed a "whistle-blower case for discrimination" in federal court. (*Id*. at ¶ 15.) As a result, Dewayne Johnson, a DOT employee who was not served in this case, "started retaliation and created a hostile work environment." (*Id*.) Plaintiffs claim Johnson and other employees and state patrol officers began periodically taking A. Shah to the police station to interrogate him in an attempt—which Plaintiffs claim was ultimately successful—to "trap[] [A. Shah] in crime based on [a] fabricated story . . . ." (*Id*. at ¶ 16.) Johnson then "terminated [A.Shah] from work

3

without following due process." (*Id*. at ¶ 20.) Plaintiffs later filed suit for a restraining order "against a white employee to stop harassment and mental torture." (*Id*. at ¶ 21.)

In 2007, Plaintiffs filed a case against Johnson and another DOT employee alleging corruption and official misconduct, including for promoting Defendant Reggie Newson. (*Id*. at ¶ 31.) As part of this lawsuit, Plaintiffs made an "open record request," but when they went to the state patrol office to pick up the record in December 2007, Nate Clark, another person who was not served in this case, "arrested [A. Shah] and did search and seizure." (*Id*. at ¶ 36.) Clark allegedly tied A. Shah to a bench and "physically tortured [sic] with different tactics," all while in contact by phone with others. (*Id*. at ¶¶ 38, 41.) I. Shah was also detained during this time. (*Id*. at ¶ 43.) Both Plaintiffs were eventually released and were later informed by mail that A. Shah was being charged with "identity theft and falsely using state position and obstruct [sic] justice," supposedly because he made the record request under a false name. (*Id*. at ¶ 46.) Plaintiffs state that the charges were false and that several Wisconsin DOT and Wisconsin Department of Justice officials collaborated in this "hate crime." (*Id*.) Plaintiffs claim that A. Shah ultimately prevailed on the criminal charges, but that his harassment continued: A. Shah was prevented from getting another job in Wisconsin and he was tracked, traced, and wiretapped by certain persons not served in this litigation. (*Id*. at ¶¶ 52–53.) He also claims that Defendant Newson and others "used their influence to corrupt judge [sic] in WI county court to bring [a] restraining order against plaintiffs." (*Id*. at ¶ 54.)

In March 2009, Plaintiffs moved to New Jersey, and A. Shah took a job with Defendant CM Consortium ("CMC"), but some of the Defendants "collaborated with the management of CMC and forced [A. Shah] to resign from work." (*Id*. at ¶ 55.) Plaintiffs allege that A. Shah's supervisor at CMC, Frank Olsen-Tank, "illegally accessed and received personal and private

4

information documents" about A. Shah without permission, apparently by taking Shah's picture or requiring Shah to submit a picture of himself or both. (*Id*. at ¶ 61.)  Olsen-Tank then started "treating [A. Shah] in a derogatory way and made the environment hostile" and tried to "trap [A. Shah] in a crime." (*Id*. at ¶ 63.)  Finally, Olsen-Tank allegedly told A. Shah he had to resign or he would be terminated. (*Id*. at ¶ 64.)  In addition, Plaintiffs state that Defendant Newson and others tracked, traced, and wiretapped Plaintiffs while they lived in New Jersey. (*Id*. at ¶ 56.)  Plaintiffs also claim that certain Defendants "influenced Magistrate court employees and Federal Magistrate to obstruct justice." (*Id*. at ¶ 59.)

Among the remaining allegations in the Complaint, Plaintiffs claim that Defendant Richard Briles Moriarty and other Wisconsin DOJ employees "obstructed justice" by "illegally associat[ing]" with other Defendants, influenced court employees, destroyed evidence, defrauded the court, and engaged in *ex parte* communication with court staff. (*Id*. at ¶¶ 66–75.)  Defendants New Jersey, New Jersey Department of Law and Public Safety, and the Office of the Attorney General are alleged to have used New Jersey tax dollars to defend the criminal acts of Wisconsin employees. (*Id*. at ¶ 76.)  And Defendants United States of America, U.S. Department of Justice, and U.S. Attorney's Office are named in the Complaint, apparently because they failed to pursue a criminal action against other defendants. (*Id*. at ¶ 77.)

Finally, we note that in countless other filings made in this case, Plaintiffs have attempted to modify, restate, and add to the claims in their Complaint. They have not sought, however, to formally amend the Complaint. Accordingly, we limit our review to the sufficiency of the Complaint as filed.

## III. ANALYSIS

### A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a 12(b)(6) motion, a district court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to plaintiff, but may disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded facts have been identified, a court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009)). A claim is only plausible if the facts pleaded allow a court reasonably to infer that the "defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1949).

### B. Claims Against the New Jersey State Defendants

Plaintiffs claim that Defendants the State of New Jersey, the New Jersey Department of Law and Public Safety, and the Office of the Attorney General ("New Jersey State Defendants") "[u]sed New Jersey tax dollars and [the] NJ AG['s] office to defend Wisconsin state political appointees . . . knowing that it is against NJ state statute 59." (Am. Compl. ¶ 76.) Plaintiffs claim this violated a number of state and federal statutes, although the Complaint fails to show how Defendants have violated New Jersey law or why Plaintiffs would have a cause of action for any such violation.

In any event, these claims must be dismissed because they are barred by sovereign immunity. State governments and state agencies are immune from suit in federal court under the Eleventh Amendment. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010). Plaintiffs have not argued that New Jersey has consented to suit or that Congress has abrogated New Jersey's immunity. Moreover, the New Jersey State Defendants are not subject to suit under 42 U.S.C. § 1983: the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Also excluded from § 1983's purview are "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes[.]" *Id.* at 70. There is no dispute that the New Jersey Department of Law and Public Policy and the New Jersey Attorney General's Office are "arms of the State." *See Stillman v. State of N.J.*, Civ. No. 88-2626, 1989 WL 5817, 2 (D.N.J. Jan. 24, 1989) (finding Department of Law and Public Policy and Attorney General's Office are "nothing more than the alter ego of the state"). Therefore, the suit cannot stand against these Defendants.

## C. Claims Against State of Wisconsin

Similarly, the claims against the State of Wisconsin and its state agencies, the Department of Transportation and the Department of Justice, are barred by sovereign immunity and § 1983's definition of a "person." Plaintiffs have presented no basis for overcoming the immunity hurdle, and we will therefore dismiss all claims against these Defendants.

## D. Claims Against Defendant Newson

Defendant Reggie Newson is identified as a "director/operational director" in the Wisconsin DOT. (Am. Comp. ¶ 11.) As an initial matter, a state's sovereign immunity limits claims against state officers. The Eleventh Amendment prohibits lawsuits for damages in federal

7

court against state officials being sued in their official capacity. *Lakaris v. Thornburg*, 661 F.2d 23, 25–26 (3d Cir. 1981). Claims can only proceed against an officer in his official capacity for prospective relief, *see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 79 n.10 (1989), or against the officer personally for monetary damages, *see Hafer v. Melo*, 502 U.S. 21, 25–26 (1991). The Complaint does not state in which capacity Newson is being sued. Even assuming proper capacity, however, the claims against Newson fail because they do not state a "plausible" claim for relief.

For the most part, Plaintiffs' claims against Defendant Newson never rise beyond threadbare accusations, including that Newson "deprive[d] plaintiffs['] constitutional rights so plaintiffs can never get a job or never get justice," "collaborated this [sic] hate crime," "influenc[ed] [A. Shah's] criminal attorney not to defend [him] but to convict him," "corrupt[ed] judge in WI county court," "influenced Newark NJ federal court staff," "collaborated with the management of CMC and forced [A. Shah] to resign from work," "collaborated and illegally used NJ AG's office and NJ AG's attorney to defend themselves," and so on. (*See generally* Am. Compl.) The only factual allegations in the Complaint are that Newson "started wiretapping, vehicle tracking by putting GPS chips in our vehicle and web tracing and putting electronic devices to record every conversation [Plaintiffs] have." (*Id*. at ¶ 56.) But these allegations are devoid of "further factual enhancement" and do not provide sufficient factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, -- U.S. ----, 129 S.Ct. 1937, 1949 (2009). Without anything more, the claims against Defendant Newson do not state a plausible claim for relief and must be dismissed.

### E. Claims Against Briles Moriarty

As with Defendant Newson, most of the allegations against Defendant Briles Moriarty lack a factual basis. (*see, e.g.,* Compl. ¶ 57 ("Briles Moriarty collaborated and illegally used NJ AG's office and NJ AG's attorney to defend themselves").) The only factual allegation against Briles Moriarty is that he "intentionally sent motion for pro hac vice (for the Trenton Federal court action 09-6441 Shah v. Wisconsin DOT) to plaintiff's old address in order to defraud the court . . . ." (*Id*. at ¶ 70.) Considering that this pro hac vice motion was filed after Plaintiffs' complaint in that action was already dismissed and the case closed (*see* docket # 13, Civ. No. 09-6441) and that the motion was docketed and mailed to Plaintiffs at the address they had provided to the Court, we find that this allegation fails to state a claim for relief. Accordingly, all claims against Defendant Briles Moriarty will be dismissed.

### F. Claims Against United States of America, Department of Justice, and U.S. Attorney's Office

The only allegation against these federal Defendants is that Plaintiffs complained to the Department of Justice about the "ongoing hate crime" but "no action were [sic] taken against defendants." (Am. Compl. ¶ 77.) This allegation fails to state a basis for relief because the "executive branch has 'exclusive authority and absolute discretion to decide whether to prosecute a case.'" *Stolt-Nielsen v. United States*, 442 F.3d 177, 183 (3d Cir. 2006) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)). The exercise of this discretion is generally "unsuitab[le] for judicial review." *Heckler v. Cheney*, 470 U.S. 821, 831 (1985). Accordingly, we will dismiss the claims against these Defendants.

### G. Claims Against Defendants Tishman Construction Corporation, the ARUP, Parson Transportation Group, and Frank Olsen-Tank

The Complaint makes no specific factual allegations against Defendants Tishman Construction Corporation, the ARUP, and Parson Transportation Group. Rather, these Defendants are alleged to constitute the joint venture, the CM Consortium ("CMC"). Plaintiffs' claims against CMC appear to derive from A. Shah's alleged mistreatment by Defendant Frank Olsen-Tank, who was apparently A. Shah's supervisor at CMC. The Complaint alleges that Olsen-Tank took a picture of A. Shah and shared it with other Defendants without Shah's permission. (Am. Compl. ¶ 61.) Plaintiffs also claim that Olsen-Tank required A. Shah to submit private, personal information along with a picture, even though other employees were not required to submit a picture, and that Olsen-Tank shared this information with others. (*Id.* at ¶ 62.) Olsen-Tank is also alleged to have treated A. Shah in a derogatory way and created a hostile work environment. (*Id.* at ¶ 63.) As a result of this conduct, Plaintiffs assert a number of claims against Olsen-Tank and the entities constituting the CMC joint venture, although it is unclear exactly which claims Plaintiffs intend to assert against which Defendants.

To the extent Plaintiffs make a claim against these Defendants under 42 U.S.C. § 1983, those claims fail as a matter of law because there is no allegation that these Defendants acted under color of state law. A § 1983 plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Although Plaintiff alleges that "[a]ll defendants . . . were acting under color of state law," (Am. Compl. ¶ 80), there is not a shred of factual support beyond this bare conclusory statement. We will not assume, as Plaintiff apparently does, that these Defendants were acting under color of state law. Even if these Defendants were acting

10

under color of state law, the Complaint is unclear as to which federally protected right Plaintiffs were deprived of. The Complaint does identify several bases for a § 1983 violation: detention without probable cause, false arrest, illegal search and seizure, denial of right to privacy, denial of right to receive open records, refusal to permit a phone call to attorney, denial of equal protection, and subjection to involuntary servitude. But these claims appear to relate to incidents that occurred while Plaintiffs were still living in Wisconsin—*i.e.* before his work with the CM Consortium—and it is difficult, if not impossible, to square these claims with the factual assertions made against Defendants Tishman, Parsons Transportation Group, The Arup, and Olsen-Tank. Accordingly, we will dismiss the § 1983 claims against these Defendants. We will also dismiss any claims for direct violation of the Constitution because § 1983 provides the cause of action for violation of those rights.

We must also dismiss any claims brought under 42 U.S.C. § 1985 and § 1986. To state a claim under § 1985(3) for conspiracy to violate a person's civil rights, a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006). To state a claim under § 1986, a plaintiff must show: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Clack v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994). In order to survive a motion to dismiss, conspiracy allegations "must provide some factual basis to support the

11

existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Sup.Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009); *see also Michel v. Wicke*, Civ. No. 10-3892, 2011 WL 3163236, at *4 (D.N.J. July 25, 2011) ("The factual allegations supporting the conspiracy claim may not be generalized or conclusory."). Plaintiffs claims fail because they allege only that a conspiracy occurred, without providing any factual support. Without any factual content, we cannot say that Plaintiffs' have stated a "plausible claim for relief." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Thus, we must dismiss these claims.

      The remainder of Plaintiffs' claims against these Defendants, including claims under the New Jersey Law Against Discrimination and Title VII of the Civil Rights Act of 1964, all sound in employment discrimination. Unfortunately, the Court is not able to address these claims at this time because it is unclear from the Complaint what the employment relationship between these Defendants and A. Shah was. Defendants argue that A. Shah was not employed by any of the Defendants but rather by a company called Radin Consulting, Inc. (Decl. of Frank Olsen-Tank ¶¶ 2, 4) [25-2]. Plaintiffs counters that Radin Consulting only handled payroll and that CMC was A. Shah's true employer. (Pls.' Resp. 6) [70-2]. Because an employment discrimination claim requires an employment relationship, *see, e.g. Hicks v. Mulhallan*, Civ. No. 07-1065, 2008 WL 1995143, at *4 (D.N.J. May 5, 2008) (finding plaintiff was "not an 'employee' and therefore not protected under Title VII or the New Jersey Law Against Discrimination"), we will give Plaintiff an opportunity to submit any evidence or provide further clarity regarding his employment relationship with these Defendants within fifteen days of the date of this filing. The Court will then be in a better position to address the limited issue of whether the Complaint states a valid cause of action under any anti-discrimination statute.

## IV. CONCLUSION

For the reasons stated above, the motions to dismiss filed by the New Jersey State Defendants, the State of Wisconsin, and the United States Defendants are granted, and the motions to dismiss filed by Defendants Frank Olsen-Tank and Parsons Transportation Group, The Arup, and Tishman Construction Corporation are granted in part and denied in part. Plaintiffs will be given fifteen days to submit any evidence of his employment relationship with Tishman Construction Corporation, the ARUP, and Parson Transportation Group.


DATE: September 16, 2011                      */s/ Anne E. Thompson*_____
                                                           ANNE E. THOMPSON, U.S.D.J.