NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

I. SHAH, et al.,

        Plaintiffs,

v.

STATE OF WISCONSIN, et al.,

        Defendants.

Civ. No. 11-0419

OPINION

THOMPSON, U.S.D.J.

    This matter has come before the Court on separate Motions to Dismiss filed by Defendants ARUP [Docket # 39], Frank Olsen-Tank ("Olsen-Tank") and Parsons Transportation Group ("Parsons") [25], and Tishman Construction Corporation ("Tishman") [57] (collectively, the "Moving Defendants"). On September 16, 2011, the Court dismissed all claims asserted by the Plaintiffs except for the employment discrimination claims alleged against the Moving Defendants and certain claims against CM Consortium ("CMC"). (Order of Sept. 16, 2011) [79]. Pursuant to that Order, Plaintiffs, I. Shah, A. Shah., and three minors, were requested to "submit any evidence they have regarding Plaintiff A. Shah's employment relationship with Defendants Tishman Construction Corporation, the ARUP, or Parson Transportation Group." (*Id.*, at 2). The Court has decided the motions upon consideration of the parties' written submissions pursuant to Fed. R. Civ. P. 78(b) and upon the Court's *sua sponte* considerations under 28 U.S.C. § 1915(e)(2)(B). For the reasons stated below, these motions will be granted and the employment discrimination claims filed against the Moving Defendants will be dismissed, along with the *sua sponte* dismissal of all claims against CMC, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

1

I.      FACTS

The Court assumes the parties' familiarity with the facts of this case as laid out in its Opinion dated September 16, 2011. [78]. Initially, the Court delayed deciding the part of the Defendants' motions concerning the employment discrimination claims in order to permit Plaintiffs the "opportunity to submit any evidence or provide further clarity regarding [A. Shah's] employment relationship with these Defendants." (Opinion of Sept. 16, 2011, at 12). In response, Plaintiffs have submitted to the Court the following: (1) a business card that contains the names "A. Shah", "CMC", "Tishman", "Parsons", and "ARUP", along with contact information and the job title of "Configuration Engineer"; (2) a photocopy of that same business card; and (3) a "Preparation, Approval and Revision of Contract Specific Validation Report" that was prepared by a "Configuration Engineer," which is alleged to be A. Shah, although his name does not appear anywhere on this report, nor was it signed by him. [84].

II.     LEGAL STANDARD

Under a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ---- -, 129 S. Ct. 1937, 1947 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next

determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009)). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 194).

### III. DISCUSSION

Plaintiffs have four outstanding claims against the Moving Defendants in this case: (1) a claim under the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1 et seq. ("NJLAD"); (2) a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"); (3) a claim under 42 U.S.C. § 1981; and (4) a claim under the Immigration and Nationality Act, 8 U.S.C. § 1324b(a)(1) ("INA").[1] In addition, all claims against CMC remain.

#### a. Immigration and Nationality Act

Plaintiffs' INA claims against all Defendants in this case must be dismissed. The INA makes it an "unfair immigration-related employment practice for a person or other entity to discriminate against any individual . . . with respect to hiring, or recruitment or referral for a fee, of the individual for employment or the discharging of an individual for employment . . . because of such individual's national origin." 8 U.S.C. § 1324b(a)(1). However, a Plaintiff must generally resort to "the comprehensive administrative process for filing a claim," and "has no private cause of action in a federal district court to enforce violations of § 1324b in the first

---

[1] As noted in the Court's initial Opinion of September 16, 2011, the Complaint consists of twenty-one pages of convoluted and confusing narrative. The Court does not read the allegations contained in the Complaint as contending that the Moving Defendants and CMC have violated the Wisconsin Fair Employment Act. Although Plaintiffs' Complaint makes a number of allegations relating to his employment in the State of Wisconsin, none of those allegations are directed toward the Moving Defendants or CMC.

3

instance." *Shine v. TD Bank Fin. Grp.*, No.09-4377, 2010 U.S. Dist. LEXIS 69529, at *22–23 (D.N.J. July 12, 2010). Judicial review is proper only at the conclusion of the administrative proceedings. *See generally* 8 U.S.C. § 1324b(f)(2); *see also Shah v. Wilco Sys., Inc.*, 126 F. Supp. 2d 641, 648 (S.D.N.Y. 2000) (discussing the appropriate procedure under the INA). Accordingly, all claims by Plaintiffs arising under the INA are dismissed.

### b. Employment Relationship with ARUP, Tishman, and Parson

Plaintiffs contend in the Complaint and in various other filings before the Court that at the time in question A. Shah was an employee of CMC. At the same time, however, Plaintiffs have brought employment-related claims under both Title VII and NJLAD against the Moving Defendants. A claim under both the NJLAD and Title VII requires a showing of an employment relationship. *See, e.g., Hicks v. Mulhallan*, No. 07-1065, 2008 U.S. Dist. LEXIS 36362, *12 (D.N.J. May 5, 2008) (finding that plaintiff was "not an 'employee' and therefore not protected under Title VII or the [NJLAD]"). In this case, Plaintiffs have alleged no facts indicating that they are a direct employee of any of the Moving Defendants. However, Plaintiffs do contend that Parsons, ARUP, and Tishman are part owners of CMC. Therefore, it appears that Plaintiffs argue that Parsons, ARUP, and Tishman should be liable on a vicarious liability or agency theory.

### 1. *Title VII*

The Court of Appeals for the Third Circuit has held that "in order to determine whether a person is an employee for purposes of Title VII, the common law of agency and the traditional master-servant doctrine applies." *Shah v. Bank of Am.*, 346 F. App'x 831, 833 (3d Cir. 2009) (citing *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322–24 (1992)).[2] Numerous factors

---

[2] The Court notes that the plaintiff in this case was named Ashok Shah, but it is unclear whether this is the same A. Shah that is presently before the Court.

should be taken into consideration in making this determination, but the control of one party by another is paramount. *See, e.g.*, *Darden*, 503 U.S. at 323–24 (listing factors).[3] In *Shah*, the Court of Appeals for the Third Circuit held that even though Bank of America qualified as an employer under the statutory definition, "that alone is not evidence that Shah is among them." *Shah v. Bank of Am.*, 346 F. App'x at 834. In another case decided by the Third Circuit, the court held that dismissal of a complaint was improper when the plaintiff had alleged in the complaint that the defendant's funding of the position, along with its actions and policies, exercised the requisite control to establish an employment relationship. *Graves v. Lowery*, 117 F.3d 723, 728 (3d Cir. 1997).

While the Court notes that, generally speaking, "the precise contours of an employment relationship can only be established by a careful factual inquiry," *Id.* at 729, in this case the Plaintiffs have alleged no fact or set of facts indicative of such a relationship. Therefore these claims must be dismissed. This Court need not accept conclusory allegations proffered in the Plaintiffs' Complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d at 210–11. As the Supreme Court has stated, "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal citations and quotations omitted).

The Defendants in this case have alleged only the conclusory statements that there is employment relationship between A. Shah and the CMC, and that "CMC is a business entity and joint venture of Tishman, Parson Transportation Group and ARUP." (Compl., ¶ 4.e). Plaintiffs have alleged no facts that indicate that it is "plausible" that Tishman, Parson, or ARUP had an

---

[3] As the court in *Shah* noted, *Draden* was an ERISA case, but the statutory language of ERISA and Title VII is identical and "the Supreme Court has applied *Draden* in other employment discrimination contexts where the statutory definition of employee is the same as that in ERISA." *Shah*, 346 F. App'x at 834 n.1.

employment relationship with A. Shah.  Therefore this case is distinguishable from the facts of *Graves* where specific factual allegations prevented the district court from granting a motion to dismiss in favor of the defendants.

In their reply brief, Plaintiffs argue that "[b]ased on the control the CMC, a Parson entity, had over [A. Shah], [A.Shah's] work location, [and A. Shah's] duties makes plaintiff an employee of the CMC as per case laws [sic] and as per the definition of the [sic] employee as per EEOC and US DOL." (Pls.' Reply Br., at 6).[4]  Notably, however, the Plaintiffs have never alleged that Parsons, ARUP, or Tishman exerted similar control over A. Shah in his employment—only CMC allegedly did so.  To the extent that this conclusory allegation suggests that because Parson has met the statutory definition of "employer" promulgated by the EEOC it must also be an employer in this particular case, the court in *Shah* specifically rejected this argument.  *See Shah*, 346 F. App'x at 834.  This Court similarly rejects this argument.

The further "evidence" offered by the Plaintiffs in their letter dated September 30, 2011 [84] does not suffice to establish an employment relationship.[5]  There is not, for example, any factual allegation that this business card was given to A. Shah by one of the Defendants for his use in employment or that A. Shah otherwise had permission to use any of the Defendant's trade names.  Rule 8 requires more than the possibility of an employment relationship—it must be plausible that such a relationship existed.  Devoid of context, this business card cannot be said to make the fact of an employment relationship plausible.

The validation report offered by the Plaintiffs is similarly unavailing.  Neither A. Shah's name nor signature appears anywhere on the report.  Likewise, nothing on the report indicates

---

[4] In their Reply Brief, Plaintiffs apparently do not contend that ARUP or Tishman is a parent corporation of CMC.
[5] In a letter to the Court, Parsons, Tishman, and Olsen-Tank argue that the Court should not consider the "evidence" attached to Plaintiffs' September 30, 2011 letter because it was unaccompanied by a sworn affidavit. (Letter from Carla D. Macaluso, Esq. of Oct. 18, 2011, at 1).  The Court need not, and does not, decide whether consideration of this "evidence" is proper because even taken in the light most favorable to the Plaintiffs, the Court holds that this supposed "evidence" could not establish the plausibility of an employment relationship.

that any Defendant other than CMC has anything to do with this report. Much like the business card offered by the Plaintiffs, this report is devoid of any meaningful context.

Although the Court recognizes that under Rule 15(a) leave to amend should be freely given when justice so requires—even in the absence of a formal request, *see Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)—this Rule does not prevent dismissal in this case. The Court specifically requested that the Plaintiffs "submit any evidence they have regarding Plaintiff A. Shah's employment relationship with Defendants Tishman Construction Corporation, the ARUP, or Parson Transportation Group" in its September 16th Order. [79]. This gave the Plaintiffs ample opportunity to correct the defects that lead to the Court's ultimate decision here today. As explained above, the "evidence" proffered by Plaintiffs was woefully inadequate to establish the plausibility of an employment relationship. In addition, we note that Plaintiffs have repeatedly run afoul of court ordered deadlines, *see, e.g.*, Opinion and Order of June 2, 2011 [43], have previously had a similar case dismissed for failure to prosecute, s*ee Shah v. Wisconsin Department of Transportation*, Civ. No. 09-6441, and have accused court employees of intentionally obstructing justice without supplying any evidence justifying that weighty accusation, *see* Letter from I. Shah of May 31, 2011 [42], all of which indicates a penchant for abusing the judicial process and bad faith.

The Court further notes that Plaintiffs reply brief appears at times to be just that (i.e., a reply brief), while at other times it appears to make an attempt at amending the pleadings. Additional factual allegations are made in the reply brief. The allegations, however, are merely "threadbare" and conclusory. For example, Plaintiffs contend that Defendants supplied A. Shah with tools, that Defendants had the right to assign work, that A. Shah was paid on a monthly or yearly basis, etc. These are exactly the type of conclusory pleadings that the Supreme Court of the United Stated in *Iqbal* declared to be insufficient at the pleadings stage. These additional "facts" alleged by the Plaintiffs closely track those factors considered by the court in cases such

7

as *Darden*, 503 U.S. at 323–24, when determining whether there exists an employment relationship between plaintiffs and defendants.  As the court in *Iqbal* explained, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  An amended complaint is "futile" if it would still fail to state a claim for relief under the Rule 12(b)(6) standard.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  Therefore, to the extent that the Plaintiffs' reply brief can be taken as a motion to amend the pleadings, such a motion would be futile.

For these reasons, not permitting leave to amend does not weigh against the interests of justice in this case.  Accordingly, the Title VII claims against ARUP, Parson, and Tishman are dismissed.

2. *NJLAD*

The foregoing analysis applies with equal force to the NJLAD claims against ARUP, Parson, and Tishman.  The substantive law of NJLAD "has been influenced markedly by experience derived from litigation under federal anti-discrimination statutes."  *Shaner v. Horizon Bancorp.*, 561 A.2d 1130, 1132 (N.J. 1989).  The Supreme Court of New Jersey has itself stated that "[i]n construing the terms of the [NJ]LAD, this Court has frequently looked to federal precedent governing Title VII of the Civil Rights Act of 1964 as a key source of interpretive authority."  *Lehmann v. Toys 'R' Us*, 626 A.2d 445, 452 (N.J. 1993) (internal citations and quotations omitted).  The Court has no doubt that a similar standard as that applied under Title VII would be adopted by the New Jersey Supreme Court in this case.  *See, e.g.*, *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 92 (3d Cir. 1999) (citations omitted) (applying a standing analysis under Title VII to similar claims arising under NJLAD); *Pukowsky v. Caruso*, 711 A.2d 398 (N.J. Super. Ct. App. Div. 1998) (adopting the reasoning of Title VII cases in holding that independent contractors are not "employees" under NJLAD); *J.M.L. ex rel. T.G. v. A.M.P.*, 877 A.2d 291,

296 (N.J. Super. Ct. App. Div. 2005) (holding that an independent contractor agreement does not establish an employment relationship under the NJLAD). For these reasons, the NJLAD claims against ARUP, Parson, and Tishman must also be dismissed.

      c.   <u>Employment Claims Against Olsen-Tank</u>

Defendant Olsen-Tank has also moved to dismiss the Title VII and NJLAD claims against him pursuant to Rule 12(b)(6). [25]. For the foregoing reasons, the Title VII and NJLAD claims against Olsen-Tank are dismissed.

Under Title VII, a plaintiff cannot maintain a cause of action against an individual. *Sheridan v. E.I. Dupont de Nemours & Co.,* 100 F.3d 1061, 1077–78 (3d Cir. 1996), *cert. denied*, 521 U.S. 1129 (1997). Therefore, Plaintiffs' Title VII claim against Olsen-Tank must be dismissed.

As a general matter, an individual defendant also cannot be held personally liable under N.J.S.A. § 10:5-12(a). *See Tarr v. Ciasulli*, 853 A.2d 921, 928 (N.J. 2004). The provision of N.J.S.A. § 10:5-12(e), however, permits individual liability on an aiding and abetting theory. *See id.* This section of the NJLAD makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the LAD]." N.J.S.A. § 10:5-12(e); s*ee also Tarr*, 853 A.2d 928.

In *Tarr*, the Supreme Court of New Jersey adopted the Restatement (Second) of Torts § 876(b) standard for determining whether an individual "aids and abets" under the NJLAD. *Id.* at 929; *see also Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998); *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 129 (3d Cir. 1999) (predicting that New Jersey courts would impose aiding and abetting liability only on supervisory employees), *cert. denied,* 528 U.S. 1074 (2000). Under this approach, an individual is liable if "he or she 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to

conduct himself.'" *Tarr*, 853 A.2d at 928 (quoting Restatement (Second) of Torts § 876(b)). To establish liability a plaintiff must prove: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Id.* (quoting *Hurley*, 174 F.3d at 127).

Olsen-Tank first argues that he was an employee of Parsons and not CMC, as the Plaintiffs allege. Therefore he argues that he cannot be held liable under the NJLAD because there is no valid employment relationship on which to premise liability, *see supra*. Regardless of what corporate entity was the actual employer of Olsen-Tank at the time in question, this is not controlling for determining liability under the NJLAD on an aiding or abetting theory. The statutory text of NJLAD specifically provides for individual liability on an aiding and abetting theory whether the person is "an employer or an employee or not." N.J.S.A. § 10:5-12(e) (emphasis added). Therefore, proving an aiding and abetting theory under LAD does not require proof of an employment relationship, and Olsen-Tank may be liable for aiding or abetting CMC regardless of whether he was employed by it.

Olsen-Tank next argues that Plaintiffs have not adequately alleged a wrongful act that caused an injury, i.e., they have not adequately alleged a prima facie case of discrimination.[6] To establish a prima case of discrimination under the NJLAD, a plaintiff must show (1) that he was subjected to differential treatment based upon membership in a protected class; (2) that he was qualified for a position and performed at a level that met his employer's expectations; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred

---

[6] The New Jersey Supreme Court has adopted the McDonnell-Douglas burden shifting approach to discrimination claims under the NJLAD. *Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133, 1138 (N.J. 2005).

under circumstances giving rise to an inference of discrimination. *Henry v. N.J. Dep't of Human Servs.*, 9 A.3d 882, 889 (N.J. 2010) (quoting *Dixon v. Rutgers, The State Univ. of N.J.*, 541 A.2d 1046, 1051–52 (N.J. 1988)). Specifically, Defendants argue that Plaintiffs have failed to adequately plead the first, third, and fourth elements of a prima facie case of discrimination.

Even on a liberal reading of Plaintiffs' *pro se* Complaint, Plaintiffs have not adequately alleged a prima facie case of discrimination. The allegations are convoluted, but reading the Complaint in the light most favorable to the Plaintiffs, the facts alleged are essentially as follows.

First, Plaintiffs argue that A. Shah was required to submit personal documentation upon being hired that other employees at CMC were not required to submit. This is not an adverse employment action. *See Simmerman v. Hardee's Food Sys.*, 1996 U.S. Dist. LEXIS 3437, at *46 (E.D. Pa. 1996) ("Although there is no exhaustive list of what constitutes adverse employment action, examples include demotion, additional responsibilities, termination, denial of a deserved promotion, pay decrease, or loss of benefits.").

Next, Plaintiffs argue that Olsen-Tank "started treating [A. Shah] in a derogatory way and made the environment hostile and drastically increased his work load and started making false deadline[s] and created every opportunity to belittle with [sic] him in front of other employees and managers." (Compl., ¶ 63). The bald allegations that Olsen-Tank made the environment hostile, that he increased A. Shah's workload, and that he belittled A. Shah is not sufficient to state a claim; there are no facts alleged that make this claim "plausible." *See Iqbal*, 129 S. Ct. at 1949 (internal citations and quotations omitted) (A complaint is inadequate "if it tenders naked assertions devoid of further factual enhancement."). In addition, there is no allegation that this occurred because of Plaintiffs' status as a member of a protected class. Rather, Plaintiffs appear to allege that Olsen-Tank engaged in this behavior as part of a nefarious plot undertaken with Defendants Johnson, Busalacchi, and Newson (collectively, "the

Conspiratorial Defendants") stemming from these Defendant's apparent animus toward A. Shah. Thus, the circumstances do not give rise to an inference of discrimination. The same Conspiratorial Defendants, along with Olsen-Tank, allegedly tried to "trap [A. Shah] in a crime and intimidate [A. Shah]," therefore violating federal law. These acts are not employment related, and therefore they cannot be said to be an adverse employment action.

Plaintiffs' next contention is that Olsen-Tank forced A. Shah to resign by threatening to involuntarily terminate him if he did not. (Compl., ¶ 64). There is no allegation that this was done on the basis of A. Shah's membership in a protected class. Rather, Plaintiffs state that at the time of the forced resignation, "Frank O-T also added that because they hired [A. Shah,] their company is loosing [sic] multimillion dollars worth of contract [sic] with Wisconsin State Government." (*Id.*). Therefore, this adverse employment action did not occur under circumstances giving rise to an inference of discrimination, but rather because CMC—or some other corporate entity—was losing money by having A. Shah as an employee. Plaintiffs go on to say the following: "Thus Frank OT and other[s] at CMC joined with [the Conspiratorial Defendants] and again violated Federal law that allows [a] person of color to do federally protected activity like work and feed his children/family." (*Id.*). As an initial matter, Plaintiffs do not appear to allege that the forced resignation violated *state* law, such as the NJLAD. Even if this could be excused because Plaintiffs are *pro se* litigants, Plaintiffs are confused as to the purpose of employment discrimination laws. Plaintiffs apparently allege that Title VII (and presumably NJLAD) grants them the unconditional ability to "work and feed [their] children" because of their status as minorities. This is fundamentally wrong. Title VII and NJLAD only protect against adverse employment actions taken on the basis of their status as a minority. In other words, Title VII and NJLAD protect against certain activity, they do not grant affirmative, unconditional rights. These statutes act as a shield, not as a sword. Taken in the light most

favorable to the Plaintiffs, the forced resignation did not occur under circumstances that give rise to an inference of discrimination.

Lastly, Plaintiffs contend the following: "Frank Olsen-Tank . . . agreed to pay my husband up to March 15, 2010 [but] forced [A. Shah] to leave [the] office all of [a] sudden on March 4, 2010 afternoon without any notice and told [him that] he w[ould] . . . not [be] pa[id] up to March 15, 2010. When my husband stepped out [of the] elevator[,] my husband found Frank O-T sitting in a lobby [and] collaborating with others over [the] phone to trap my husband in a crime." (Compl., ¶ 65). Again, Plaintiffs mention nothing about their status in a protected class, and the circumstances lead to the inference that the adverse employment action—assuming *arguendo* that there was one—resulted from the alleged conspiracy engaged in by the Conspiratorial Defendants and Olsen-Tank, not discrimination.

For these reasons, Plaintiffs have failed to adequately allege a prima facie case of employment discrimination, and dismissal of these claims is proper at the pleading stage. *See, e.g.*, *Sangi v. Warren Hosp.*, No. 10-4571, 2011 U.S. Dist. LEXIS 117463 (D.N.J. Oct. 11, 2011). As explained above, not permitting an amended pleading does not weigh against the interests of justice in this case. *See supra*, Part III.b.

        d.  <u>42 U.S.C. § 1981</u>

Plaintiffs have also raised claims under 42 U.S.C. § 1981 against the Defendants in this case. To establish a claim for relief under 42 U.S.C. § 1981, a plaintiff must establish (1) that Plaintiffs are a member of a racially cognizable group; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination related to one of the activities enumerated in the statute. *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797–798 (3d Cir. 2010) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)). The same McDonnell-Douglas burden shifting analysis applied to Title VII claims applies to § 1981 claims

as well.  *Coleman v. Blockbuster, Inc.*, 352 F. App'x 676, 680 (3d Cir. 2009).  Plaintiffs § 1981 claim is premised on an alleged employment contract between A. Shah and the Moving Defendants, as well as CMC.  "The aim of the prima facie test [when premised on an employment contract] is to discern 'whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.'"  *Id.* (quoting *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 352 (3d Cir. 1999)).  As explained above, Plaintiffs have failed to adequately plead a prima facie case of discrimination against any of the Defendants.  *See supra* Part III.c.  Therefore, the 42 U.S.C. § 1981 claims against all of the above-named Defendants are dismissed.

   e. <u>Claims Against CM Consoritum</u>

  After dismissing all of the claims above, the only claims remaining from Plaintiffs' Complaint are those alleged against CMC.  At this time, the Court will dismiss *sua sponte* all claims against CMC.

  When a plaintiff proceeds *in forma pauperis*, a district court "shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

  Dismissal of the claims against CMC is proper in this case because the Court has decided in its Opinion here today that Plaintiffs have not alleged a valid prima facie claim under any of the federal or state employment-discrimination statutes.  This ruling applies with equal force to the claims against CMC as it does to Olsen-Tank.  Therefore, all employment-related claims against CMC are dismissed for the reasons stated above.  Additionally, the Court in its Opinion of September 16, 2011 [78] rejected all of the Plaintiffs' other claims arising under 42 U.S.C. §§ 1983, 1985, and 1986, as well as any claim arising directly under the United States Constitution.

The reasoning of that opinion applies with equal force to the claims against CMC. As such, the non-employment-discrimination claims against CMC are also dismissed.

### IV.     CONCLUSION

For the reasons stated above, and for good cause shown, the Defendants separate motions are granted and all remaining claims raised by the Plaintiffs are dismissed with prejudice. The Defendants' other arguments need not be discussed. An appropriate order will follow.


                                                    */s/ Anne E. Thompson*
                                                    **ANNE E. THOMPSON, U.S.D.J.**

Dated: October 28, 2011